# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **TONYA LONG, individually, and on behalf of all others similarly situated,** | **Case No.:** |
| *Plaintiff*, | |
| **v.** | |
| **BIO-LAB INC., KIK CUSTOM PRODUCTS, INC.** | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Tonya Long, individually and on behalf of the putative class of all similarly situated persons, sue Defendants Bio-Lab Inc. and KIK Custom Products, Inc. (together "KIK Bio-Lab") and, based upon personal knowledge and on investigation of counsel and review of public documents and information, allege as follows:

## INTRODUCTION

1.     On September 29, 2024, at approximately 5:00 a.m., a chemical fire broke out on the roof of the KIK Bio-Lab facility in Conyers, Georgia.

2.     Around that same time, a building sprinkler activated, spraying water onto water reactive chemicals and triggering explosive chemical reactions.

3.     The initial fire subsided, but reignited a few hours later. Firefighters rushed to the scene to quell the flames. However, because the source of the ignition was water reactive chemicals, traditional firefighting methods were unable to effectively contain the unfolding disaster.

4.     Massive walls of smoke, containing toxic chemicals such as chlorine, hydrochloric acid, hydrogen cyanide, hydrogen bromide and phosgene billowed throughout Rockdale County.

These chemicals are incredibly caustic, and can cause severe, life-changing injuries with even short-term exposures.

5.      An evacuation order was issued, mandating that anybody physically present in Conyers, Georgia immediately flee from the toxic clouds filling the town. All residents of Rockdale County were ordered to shelter in place, and turn off all air conditioners and ventilation systems to the toxic air outside.

6.      Plaintiff Tonya Long, along with thousands of other class members, was forced to evacuate her home with no advanced notice. She remains evacuated and scared of the long-term implications for her family.

7.      Defendants' recklessness has upended the lives of nearly 100,000 Georgians, who must now fear for their health and the habitability of their neighborhoods.

8.      Defendants' recklessness has caused numerous similar explosions before— including several at the very Conyers facility that just exploded. Yet no level of catastrophe has prompted them to act more responsibly.

9.      Plaintiff brings this action on behalf of herself and the putative class to ensure that Defendants pay for their recklessness, and account for the consequences that Defendants have imposed on this community.

## PARTIES

10.     Plaintiff Tonya Long is a citizen of Georgia and lives in Rockdale County, in Conyers. As a result of Defendants' reckless conduct, Plaintiff has been exposed to toxic chemicals and been forced to evacuate from her home.

11.     Defendant Bio-Lab, Inc. ("BioLab") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business located

at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5. Defendant BioLab is a wholly owned subsidiary of Defendant KIK.

12.     Defendant KIK Custom Products, Inc. ("KIK") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5

13.     Upon information and belief, Bio-Lab has consistently held itself out as conducting business affairs as a conduit for KIK in connection with the ownership and operation of the their chemical enterprise. Additionally, BioLab and KIK constituted a joint venture in connection with their chemical enterprise insasmuch as they agreed to undertake ownership and operation of the enterprise jointly for the purpose of sharing associated profits and losses, and in connection therewith, each contributed their respective skills, property or resources in exercising control or a right of control over the facilities.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are more than 100 Class Members, and Plaintiff and many Class Members and Defendants are citizens of different states.

15.     This Court has jurisdiction over each Defendant because they each operated their chemical enterprise in this District. Through their regular business operations in this District, Defendants intentionally and regularly availed themselves of the markets and jurisdiction in this District, conferring this Court with personal jurisdiction over each Defendant.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, and

3

Defendants' railway operations in this District caused harm to Plaintiff and Class Members in this District.

## STATEMENT OF FACTS

17.     The Conyers facility opened in 1973. Among other operations, the site receives, blends, and packages Trichloroisocyanuric Acid ("TCCA") into finished consumer products.

18.     TCCA is a chlorinating agent often used for sanitizing swimming pools and hot tubs. It is a white solid substance manufactured at the BioLab facility and available as a powder, compacted tablets, and granules.

19.     In large bodies of water such as pools, TCCA breaks down slowly to released hypochlorous acid (HClO), which kills bacteria, algae and other microorganisms.

20.     However, when TCCA comes in contact with a small amount of water, it causes a chemical reaction which generates heat, and decomposes the TCCA. This process produces chlorine gas and explosive nitrogen trichloride.

21.     Chlorine is a toxic substance immediately dangerous to life or health if inhaled.

22.     It is well known that water-reactive materials such as TCCA may violently produce toxic and hazardous gases, produce enough heat to cause self-ignition, and ignite other nearby combustibles.

23.     At any given moment, the Conyers facility can contain hundreds of thousands of pounds of TCCA. These are often packaged in 2750 pound "super sacks" stacked on warehouse floors.

24.     Defendants' reckless handling of TCCA has caused numerous prior explosions and mass casualty events.

25.     On May 25, 2004, the KIK Bio-Lab facility in Conyers caught on fire, releasing a plume of caustic smoke that spanned for well over 100 miles, and stretched nearly as far as the South Carolina state line.

26.     The fire originated in a warehouse that housed approximately 12.5 million pounds of pool chemicals and oxidizers.

27.     The 2004 explosion released massive amounts of chlorine and hydrochloric acid into the air. Hydrogen cyanide, hydrogen bromide and phosgene were also released.

28.     This catastrophe caused the evacuation of all businesses and residences with a 1.5 mile radius. Nearly 30 people were hospitalized.







29.     Two other explosions occurred at KIK Bio-Lab's Conyers facility in 2020.

30.     On September 14, 2020, a TCCA reaction and explosion occurred at the Conyers facility, closing down I-20, and causing the evacuation of surrounding businesses and over $1 million in property damage.

31.     A 3/8 inch water line leaked sometime between September 12, 2020 and September 14, 2020, covering about 75% of the building floor. For some reason, there was also unpackaged TCCA on the floor. The TCCA started to fume and turn milky white.

32.     Workers tried to move non-decomposing TCCA super sacks away from the decomposing product, however, the conditions soon became far too toxic to continue rescue operations.




33.     The Rockdale County Fire Department found that "access to the decomposing pallets was hindered by other surrounding poorly stacked pallets of materials".

34.     Nine firefighters were hospitalized after inhaling defendants' toxic vapors.

35.     Four days later, on September 18, 2020, a trailer containing TCCA caught on fire at the Conyers facility. It was suspected that some of this TCCA had gotten wet or heated during the September 14 event.



36.    These explosions occurred just weeks after major explosions rocked KIK BioLab's facility in Lake Charles, Louisiana on August 27, 2020. A very large chemical-based cloud containing hundreds of thousands of pounds of chlorine quickly spread through surrounding areas.





37.     The U.S. Chemical Safety & Hazard Investigation Board found that "Bio-Lab experienced serious delays in its response to the TCCA decomposition and fire (roughly five and a half hours), due to an inadequate and largely nonfunctional fire protection system and the absence of automated extinguishing systems. This significant delay in responding to the decomposition likely led to an unnecessary increase in (1) the amount of TCCA that decomposed, (2) the quantity of toxic chlorine released, and (3) the extent of the facility damage".

38.     CSB also found that "Bio-Lab did not adequately maintain its fire protection system to protect against fire hazards and ensure its functionality during an emergency".

39.     Despite catastrophic failure after catastrophic failure, Defendants have stubbornly refused to do the bare minimum, or take proper precautions with their volatile and hazardous chemicals to prevent another catastrophic toxic chemical reaction, explosion and release.

40.     At about 5:00 a.m. on the morning of September 29, 2024, a chemical fire broke out yet again at KIK Bio-Lab's Conyers facility.

41.     This was exacerbated by the activation and malfunction of a building sprinkler, which added water to water reactive chemicals like TCCA.

42.     Massive walls of smoke, containing toxic chemicals such as chlorine, hydrochloric acid, hydrogen cyanide, hydrogen bromide and phosgene billowed throughout Rockdale County. These chemicals are incredibly caustic, and can cause severe, life-changing injuries with even short-term exposures.

43.     Plaintiff and her family have been exposed to these toxic chemicals, and are suffering from significant nasal irritation, light-headedness, fatigue, nausea, and severe emotional distress.

44.     Plaintiff, along with other residents of Conyers, Georgia were abruptly ordered to evacuate their homes several hours after the explosions began emitting toxic plumes throughout their community.

45.     Plaintiff has incurred relocation and response costs and continues to do so.

46.     Plaintiff also works in the area and has been unable to work or derive income during the catastrophe.

47.     Over 17,000 people were ordered to evacuate from their homes. Another 90,000 in greater Rockdale County were ordered to shelter in place. All residents of Rockdale County were

ordered to shelter in place and turn off all air conditioners and ventilation systems to the toxic air outside.

48.     Both the evacuation and the shelter in place orders remain in effect as of the filing of this complaint. Residents have no idea how long the air at their homes will remain poisonous to breath, or how long these orders will remain in effect.

49.     Debris from the decomposition and combustion is strewn throughout Rockdale County. This debris and toxic fallout will contain numerous harmful chemical byproducts of the explosions and require soil and property testing and cleanup.

50.     Defendants' recklessness has upended the lives of nearly 100,000 Georgians, who must now fear for their health and the habitability of their neighborhoods. Despite repeated warnings that their conduct would cause catastrophic consequences, Defendants refused to behave responsibly. Now an entire county must bear the costs.

51.     Plaintiff brings this action on behalf of herself and the putative class to ensure that Defendants pay for their recklessness, and account for the consequences that Defendants have imposed on this community.

## CLASS ALLEGATIONS

52.     Plaintiffs seek relief on behalf of himself and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a class defined as follows:

**All persons who resided, owned property, or derived income within Rockdale County, Georgia as of September 29, 2024 ("the Class Zone")**

53.     Excluded from the Class are Defendants and any of their affiliates, parents or subsidiaries; all employees of Defendants; all persons who make a timely election to be excluded

from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

54.   Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or subclassing after having had an opportunity to conduct discovery.

55.   The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

56.   **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  While the exact number of Class Members is unknown to Plaintiff at this time, the proposed Class includes thousands of residents who were unlawfully exposed to or inconvenienced by KIK Bio-Lab's chemical explosions. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

57.   **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

  a.   Whether Defendants' operated their chemical enterprise negligently, recklessly, intentionally or otherwise tortiously;

  b.   Whether Defendants owed a duty of care to Plaintiff and the Class;

  c.   Whether the duty of care owed to the Class included the duty to protect Plaintiff and the Class against unreasonable harm through exposures to unsafe and unnecessarily high levels of toxic chemicals;

13

d.     Whether Defendants breached their duty to warn Plaintiff and the Class of and protect Plaintiff and the Class from the health risks and consequences of exposure to chemicals originating from their chemical explosions; and

e.     Whether Plaintiff and the Class are entitled to relief and the nature of that relief.

58.    **Typicality. Fed. R. Civ. P. 23(a)(3).**   Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of the putative Class Members.  Plaintiffs reside or work in the vicinity of the Defendants' chemical explosions, and bring claims based upon the same legal theories as those of the other Class Members.

59.    Plaintiffs and the other Class Members sustained damages as a direct and proximate result of the same wrongful acts or omissions in which Defendants engaged.

60.    Plaintiffs' damages and injuries are akin to those of Class Members, and Plaintiffs seek relief consistent with the relief of Class Members.

61.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendants to obtain relief for the Class.  Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including environmental litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of Class Members.

62.    **Superiority. Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even

14

when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class, while important to them, are relatively small compared to the burden and expense required to individually litigate their claims against Defendants. Thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

63. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

64. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

65. Finally, all members of the proposed Class are readily ascertainable as they are all current or former residents of defined tracts. Class Members can be identified, and their contact information ascertained for the purpose of providing notice to the Class.

## COUNT I –ULTRAZARDOUS ACTIVIES

66. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 65 as if fully set forth here.

67. The manufacture and storage of highly toxic and combustible chemicals is abnormally dangerous and cannot be made safe by the exercise of the utmost care. The ignition of

Defendants' Conyers Facility resulted, and continues to result, in emissions of highly toxic substances to surrounding communities, which pose a high degree of risk to Plaintiff and Class Members.

68.     There is likelihood that emissions of caustic chemicals will result in significant irritation and discomfort. This risk cannot be eliminated as long as these chemicals are emitted into populated areas. It was completely inappropriate for Defendants to store chemicals in a way that would be likely to cause their ignition and emission into a populated area.

69.     Defendants' storage of these chemicals and methods of operating their Conyers Facility created a high degree of risk to those who live in the surrounding area and substantially increased their risk of developing several different types of cancer and diseases.

70.     The activities conducted by Defendants are exceedingly dangerous and offer little or no value to the surrounding community.

71.     Because these activities are ultrahazardous, Defendants are strictly liable for any injuries proximately resulting from them.

72.     As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiff and Class Members were significantly exposed to toxic chemicals, and have suffered discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, and diminution in property value.

73.     Defendants, through their knowledge of each other's operations relating to their Conyers facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plan and design to conduct ultrahazardous activities and are therefore jointly liable to Plaintiff and Class Members.

74.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT II—NEGLIGENCE

75.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 65 as if fully set forth here.

76.     Each Defendant owed Plaintiff and Class Members a duty to operate their chemical enterprise in a manner which would not cause Plaintiff and Class Members injury or harm.

77.     Defendants owed Plaintiffs and Class Members a duty to use reasonable care in the manufacture and storage of chemicals in Rockdale County, Georgia.

78.     Defendants each negligently breached their duty of care by causing their Conyers facility to explode, and by releasing and allowing the release of caustic chemicals.

79.     Defendants each owed Plaintiff and Class Members a duty of reasonable care and preventing unreasonable harm commensurate with the risk of operating a chemical facility.

80.     Because of the likelihood of contamination of neighboring areas and exposure to their occupants, Defendants each had a duty to operate their facility in a manner which would prevent it from exploding, and from contaminating the air in nearby communities.

81.     Defendants each negligently breached their duty of reasonable care and preventing unreasonable harm by, among other things:

   a.  Emitting dangerous volumes of harmful chemicals into the environment;

   b.  Failing to employ safe methods to adequately control their chemical enterprises and ensure explosions, ignitions, and runaway chemical reactions did not occur;

c.   Failing to ensure the adequacy and operation of sprinklers at their Conyers facility;

d.   Failing to ensure that chemicals were stored in a manner that would prevent them from coming into contact with water;

e.   Failing to utilize corporate policies and procedures that would prevent ignitions, explosions, and runaway chemical reactions from happening;

f.   Failing to store hazardous materials in such a way as to avoid their contact with populated areas; and

g.   Failing to have or implement a responsible emergency response plans that would minimize and contain the release of toxic chemicals into the environment.

82.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members were significantly exposed to toxic chemicals, and have suffered discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, and diminution in property value.

83.    Defendants, through their knowledge of each other's operations relating to their Conyers facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plan and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class Members.

84.    Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT III—WILLFUL & WANTON CONDUCT

85.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 65 as if fully set forth here.

86.     At all times relevant, each Defendant owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living in the areas near its Conyers facility.

87.     Defendants were at all relevant times aware that their manufacture and storage of toxic and combustible chemicals could result in extreme physical harm to individuals in communities surrounding its Conyers facility.

88.     Defendants were at all relevant times aware that the ignition and release of thousands of pounds caustic chemicals would result in extreme distress and physical harm to individuals in communities surrounding its Conyers facility.

89.     Notwithstanding its duty, Defendants each breached their duty by, among other things:

a.   Failing to operate, maintain, inspect and/or repair their Conyers facility in such a way to ensure its safe and proper operation, particularly when storing large volumes of hazardous and combustible materials;

b.   Failing to ensure proper procedures or systems for timely identifying any malfunctions of its sprinkler systems, in order to prevent or mitigate water contact with water reactive chemicals;

c.   Failing to ensure proper safety procedures in the event of a facility malfunction while storing such hazardous materials;

d.   Failing to ensure a proper mechanism for preventing water reactive chemicals from being exposed to water;

e.   Failing to prevent runaway chemical reactions in its facilities;

f.   Failing to manufacture or store hazardous materials in a manner which would not cause Plaintiffs injury or harm; and

g.   Igniting large volumes of chemicals in such a way that tens of thousands of people were likely to be exposed.

90.   Defendants' failures in these and other respects in the face of actual knowledge regarding the risks of unreasonable harm constitute willful, wanton, reckless and outrageous conduct, and demonstrates an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and Class Members

91.   As a direct and proximate result of each Defendant's willful and wanton conduct, Plaintiffs and Class Members were significantly exposed to toxic chemicals, and have suffered discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, and diminution in property value.

92.   Defendants, through their knowledge of each other's operations relating to their Conyers facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plan and design to conduct ultrahazardous activities and are therefore jointly liable to Plaintiff and Class Members.

93.   Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT IV—PRIVATE NUISANCE

94.   Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 65 as if fully set forth here.

95.   Defendants have unreasonably contaminated real property within Rockland County.

20

96.     Defendants unreasonable use of their property and their unreasonable ignition and explosion of their Conyers facility has unreasonably interfered with the rights of Plaintiffs and Class Members to use and enjoy their property, causing them to suffer injuries, inconvenience, emotional distress, and diminution in property value.

97.     Plaintiffs, unlike the public generally, have suffered specific injuries as a result of Defendants' tortious conduct, including the pollution of their property.

98.     Defendants improper manufacture, storage, discharge, and ignition of highly caustic and combustible chemicals constitutes a private nuisance. This nuisance has directly and proximately caused Plaintiffs to presently suffer, and continue suffering in the future, loss of use and enjoyment of their property, discomfort, inconvenience, emotional distress, and diminution in property value.

99.     Defendants, through their knowledge of each other's operations relating to their Conyers facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plan and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class Members.

100.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT V—TRESPASS

101.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 65 as if fully set forth here.

102.     Defendants, through their activities alleged herein, allowed hazardous materials to enter and contaminate Plaintiffs' property. They intentionally, knowingly, and negligently

discharged and released highly toxic chemicals onto the real property of Plaintiffs and Class Members.

103.   At all times, Defendants' conduct displayed indifference to and disregard for Plaintiffs' rights to their land.

104.   Defendants' intentional, knowing, and negligent discharge of highly toxic chemicals into Plaintiffs' and Class Members' property has interfered with the rights of Plaintiffs to use and enjoy their property and constitutes trespass and continuing trespass. Defendants trespass has substantially impaired Plaintiffs' rights of use and enjoyment of their property and has caused Plaintiffs to presently suffer, and continue suffering in the future, loss of use and enjoyment of their property, discomfort, inconvenience, emotional distress, and diminution in property value.

105.   Defendants, through their knowledge of each other's operations relating to their Conyers facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plan and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class Members.

106.   Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.   For an Order certifying the Class, as defined above, and appointing Plaintiff and her Counsel to represent the Class;

b.      For damages, including compensatory, punitive, and exemplary damages, in an amount determined to be just and reasonable;

c.      For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

d.      For prejudgment interest on all amounts awarded;

e.      For injunctive and declaratory relief, as allowed by law; and

f.      Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

**FILED:**  Dated September 30, 2024.

**Respectfully submitted,**

**MORGAN & MORGAN**

*/s/ Max Compton*
William Maxwell Compton
Georgia Bar No. 380092
200 Stephenson Ave.
Suite 200
Savannah, GA 31405
TEL: (912) 443-1017
FAX: (912) 443-1184
MCompton@forthepeople.com

T. MICHAEL MORGAN*
FL Bar No. 62229
mmorgan@ForThePeople.com
**MORGAN & MORGAN, P.A.**
20 N Orange Ave., Suite 1600
Orlando, FL 32801
P: (407) 418-2031
F: (407) 245-3384

RENE F. ROCHA*
LA Bar No. 34411
MORGAN & MORGAN,
COMPLEX LITIGATION GROUP
400 Poydras Street, Suite 1515

New Orleans, LA 70130
rrocha@ForThePeople.com
P:  (954) 318-0268
F:  (954) 327-3018

FRANK PETOSA*
FL Bar No. 972754
MORGAN & MORGAN,
COMPLEX LITIGATION GROUP
8151 Peters Road
Suite 4000
Plantation, FL 33324
fpetosa@ForThePeople.com
P:  (954) 318-0268
F:  (954) 327-3018

*Attorneys for the Plaintiff and
the Putative Class*

*\*Pro Hac Vice Pending*